## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CITY OF WORCESTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| PURDUE PHARMA L.P, d/b/a PURDUE | ) Civil Action No. _____ |
| PHARMA (DELAWARE) LIMITED | ) (Removal from: Superior Court |
| PARTNERSHIP; PURDUE PHARMA INC.; | ) Department, Commonwealth of |
| THE PURDUE FREDERICK COMPANY, INC.; | ) Massachusetts) |
| TEVA PHARMACEUTICALS USA, INC.; | ) |
| CEPHALON, INC.; COLLEGIUM | ) |
| PHARMACEUTICAL, INC.; JOHNSON & | ) |
| JOHNSON; JANSSEN PHARMACEUTICALS, | ) |
| INC.; ORTHO-MCNEIL-JANSSEN | ) |
| PHARMACEUTICALS, INC. N/K/A JANSSEN | ) |
| PHARMACEUTICALS, INC.; ENDO HEALTH | ) |
| SOLUTIONS INC.; ENDO | ) |
| PHARMACEUTICALS, INC.; ALLERGAN | ) |
| PLC f/k/a ACTAVIS PLC; ACTAVIS, INC. f/k/a | ) |
| WATSON PHARMACEUTICALS, INC.; | ) |
| WATSON LABORATORIES, INC.; ACTAVIS | ) |
| LLC; ACTAVIS PHARMA, INC. f/k/a | ) |
| WATSON PHARMA, INC.; MALLINCKRODT | ) |
| PLC; MALLINCKRODT LLC; and INSYS | ) |
| THERAPEUTICS, INC., | ) |
| | ) |
| Manufacturer Defendants, | ) |
| | ) |
| -and- | ) |
| | ) |
| MCKESSON CORPORATION; CARDINAL | ) |
| HEALTH, INC.; AMERISOURCEBERGEN | ) |
| DRUG CORPORATION, | ) |
| | ) |
| Distributor Defendants, | ) |
| | ) |
| -and- | ) |
| | ) |
| JOHN KAPOOR, | ) |
| | ) |
| Individual Defendant. | ) |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant AmerisourceBergen Drug Corporation ("ABDC") has removed the above-captioned action from the Superior Court Department, Commonwealth of Massachusetts, to the United States District Court for the District of Massachusetts. As grounds for removal, ABDC states:

## I.   NATURE OF REMOVED ACTION

1.   On July 30, 2018, the City of Worcester, Massachusetts ("Plaintiff") filed *City of Worcester v. Purdue Pharma L.P., d/b/a Purdue Pharma (Delaware) Limited Partnership, et al.*, in the Superior Court Department, Commonwealth of Massachusetts. The court assigned the case No. 1885CV01160.

2.   The Complaint asserts claims against three groups of Defendants.

3.   The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Collegium Pharmaceutical, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt plc; Mallinckrodt LLC; and Insys Therapeutics, Inc. (collectively, "Manufacturer Defendants").

4.   The second group of defendants consists of ABDC; Cardinal Health, Inc.; and McKesson Corporation (collectively, "Distributor Defendants").

5.   The third and final group of defendants consists of John Kapoor ("Individual Defendant").

6.   With respect to the Distributor Defendants, Plaintiff complains of over-distribution of prescription opioids into Massachusetts and alleges that the Distributor

Defendants "flooded" the City of Worcester "with an excess supply of pharmaceutical opioids." Compl. ¶ 16.

7.      The Complaint asserts seven counts against ABDC and the other Distributor Defendants: public nuisance (Count I); common law fraud (Count II); negligent misrepresentation (Count III); negligence (Count IV); unfair and deceptive acts in violation of Mass. Gen. Laws ch. 93A, Section 11 (Count V); unjust enrichment (Count VI); and civil conspiracy (Count VII). *See* Compl. ¶¶ 466-536, Prayer for Relief.

8.      In support of its causes of action, Plaintiff pleads, among other things, that federal laws and regulations require distributors to "to report to [the Drug Enforcement Administration] suspicious orders for controlled substances and to take other precautions to ensure that those medications would not be diverted into illegal channels," Compl. ¶ 15 (internal quotations omitted), and that Distributor Defendants failed to "detect, report, inspect, and halt suspicious orders, so as to prevent the black market diversions of controlled substances," *id.* ¶ 16.

9.      Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

10.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") formed a multidistrict litigation ("MDL") and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328. More than

1,000 opioid-related actions are pending in the MDL, including more than 90 actions originally filed in this District.[1]

11.     ABDC intends to tag this case immediately for transfer to the MDL.

12.     In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served on ABDC in the state court action are attached as **Exhibit A**.

## II.     TIMELINESS OF REMOVAL

13.     ABDC was served with the Complaint on August 20, 2018.

14.     ABDC has not responded to the Complaint in state or federal court.

15.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

16.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.     PROPRIETY OF VENUE

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the venue where the state court action was pending prior to removal is a state court within this federal district and division.

---

[1] *See, e.g.*, JPML Dkt. No. 2060 (CTO-46) (transferring 6 cases from D. Mass. to MDL); JPML Dkt. No. 2025 (CTO-45) (transferring 17 cases from D. Mass. to MDL); JPML Dkt. No. 1894 (CTO-42) (transferring 11 cases from D. Mass. to MDL).

## IV.    BASIS OF REMOVAL

18.    Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiff's

claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*[2]

19.    The original jurisdiction of the district courts includes jurisdiction over "all civil

actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

20.    "Whether a case 'arises under' federal law for purposes of § 1331" is governed by

the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535

U.S. 826, 830, 839 (2002).

21.    Even when state law creates the causes of action, a complaint may raise a

substantial question of federal law sufficient to warrant removal if "vindication of a right under

state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v.*

*Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see Gully v. First Nat'l Bank*, 299

U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the

---

[2] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets and citations omitted).

Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").

22.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258; *see also One & Ken Valley Hous. Grp. v. Maine State Hous. Auth.*, 716 F.3d 218, 224 (1st Cir. 2013) (federal jurisdiction is proper "where a state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" (citation and alteration omitted)); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 48 (1st Cir. 2009) ("To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state-law cause of action that contains an embedded question of federal law that is both substantial and disputed.").

23.     As set forth below, this case meets all four requirements.[3]

24.     Although Plaintiff ostensibly pleads some of its theories of recovery against ABDC as state law claims, it bases the underlying theory of liability on ABDC's alleged

---

[3] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that some of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that ABDC allegedly had a duty to identify, report, and then not ship.

25.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations, 21 C.F.R. § 1301.71(a), as the Complaint itself acknowledges. *See* Compl. ¶ 15 (citing 21 C.F.R. § 1301.71(a) to establish Distributor Defendants alleged "duties to report to the DEA suspicious orders for controlled substances" (quotation marks and alterations omitted)); *id.* ¶ 348 ("Under the statutory scheme set out in the CSA, enacted by Congress in. 1970, wholesale pharmaceutical distributors were given the statutory obligation to have in place 'effective controls' to prevent the 'diversion' of controlled substances. 21 C.F.R- §1301.71(a).").

26.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement"); *see also* Compl. ¶ 348 (alleging that, under the CSA "the wholesaler must investigate the suspicious order, document the result of the investigation, and, if not reasonably satisfied that the suspicious order is for the legitimate sale of the Retail End User, it

must immediately halt the sale" (citing *Masters Pharm.*, 861 F.3d at 212-13)); *id.* ¶ 15 (citing *Masters Pharm.*, 861 F.3d at 211-12 to establish Distributor Defendants' alleged duties "to ensure that [opioid] medications would not be diverted into illegal channels").

27.     Plaintiff's theories of liability against ABDC and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that ABDC and Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiff's claims—to "halt" or refuse to ship such orders to Massachusetts pharmacies. *See* Compl. ¶¶ 14-17, 310, 348-74.

28.     Specifically, Plaintiff invokes federal law to support its claims and pleads that ABDC and the other Distributor Defendants violated federal law with, among others, the following allegations:

> a.     "[T]he wholesale distributor has a statutory duty . . . to conduct its business of distributing dangerous drugs in a reasonable and safe manner. Included among these obligations are the duties 'to report to [the] DEA suspicious orders for controlled substances and to take other precautions to ensure that those medications would not be diverted into illegal channels.' *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 211-12 (D.C. Cir. 2017); 21 C.F.R. § 1301.77." Compl. ¶ 15.

> b.     "Each Distributor Defendant utterly failed to discharge its statutory obligations . . . to detect, report, inspect, and halt suspicious orders, so as to prevent the black market diversion of controlled substances." Compl. ¶ 16.

c.      "Each Distributor Defendants has been investigated and fined by the DEA for failing to: (a) operate its mandatory internal oversight system in good faith; (b) report suspicious orders to the DEA; and (c) halt the shipment of 'suspicious orders for controlled substances' when they were discovered." Compl. ¶ 17.

d.      "Under the statutory scheme set out in the CSA, enacted by Congress in 1970, wholesale pharmaceutical distributors were given the statutory obligation to have in place 'effective controls' to prevent the 'diversion' of controlled substances. 21 C.F.R. § 1301.71(a). Once a pharmaceutical distributor detects a 'suspicious order' of the controlled substance, it is obligated to take several mandatory steps. It must report the 'suspicious order' to the DEA. Additionally, the wholesaler must investigate the suspicious order, document the result of the investigation, and, if not reasonably satisfied that the suspicious order is for the legitimate sale of the Retail End User, it must immediately halt the sale. *See Masters Pharm.*, 861 F.3d at 212-13." Compl. ¶ 348.

e.      "[T]he three Distributor Defendants have engaged, and continue to engage, in the unlawful conduct of failing to report suspicious orders, reasonably investigate such orders, or halt such orders, thereby knowingly, recklessly, or negligently making grossly excessive distributions of opioid drugs into the City of Worcester, and its surrounding areas, which threatened (and continues to threaten) the public health and safety of residents to the City." Compl. ¶ 361.

f. "Each Distributor Defendant made the unlawful and unconscionable decision to not halt suspicious sales, where it had strong reason to believe, or actually knew, that the prescription drugs were being diverted and not being used for legitimate reasons, thereby subjecting Americans and Massachusetts residents, including residents of the Worcester community, to grievous harm up to, and including, death by overdose." Compl. ¶ 365.

g. "The repeated shipments of suspicious orders, year-after-year, by each Distributor Defendant, demonstrated its reckless conduct and criminal indifference to its statutory and common law obligations, which it knew would result in a great probability of causing substantial harm to a great many American communities, including Worcester." Compl. ¶ 372.

h. "The Distributor Defendants' failure to detect, report, investigate, and halt suspicious orders is a direct, foreseeable, and proximate cause of the excessive amounts of opioids that have inundated the City of Worcester in numbers far beyond any legitimate medical need." Compl. ¶ 373

i. "Distributor Defendants knew the material fact that they had a statutory duty under both Massachusetts law and federal law, as well as a common law duty, to protect the public health by monitoring and controlling the amount of prescription opioids that was allowed to enter the Worcester area. They knew they were not discharging that responsibility, failed to alert the DEA and state authorities about 'suspicious sales' of drugs, and failed to halt the suspicious sales of drugs throughout the United States, including in and/or to the City of Worcester." Compl. ¶ 482.

j.      "Despite this knowledge of grave foreseeable harm to the City of Worcester from distributing vast quantities of opioids without regard to whether or not the sales were suspicious and without disclosing the material fact that they were acting in violation of laws and regulations requiring that they maintain a system to prevent suspicious sales, the Distributor Defendants breached their duty to distribute the opioids in a fair and reasonable manner." Compl. ¶ 492.

k.      "[T]he FCSA . . . create[s] statutory standards that require prescription drug distributors to maintain and monitor a closed chain of distribution and detect, report, inspect, and halt suspicious orders, so as to prevent the black market diversion of controlled substances." Compl. ¶ 503.

l.      "Distributor and Manufacturer Defendants unlawfully failed to act to prevent diversion and failed to monitor for, report, and prevent suspicious orders of opioids." Compl. ¶ 531.

29.     Although Plaintiff purports to "den[y] that the reference to the CSA in this Complaint means that any claims 'arise under' federal law within the meaning of 28 U.S.C. § 1331," Compl. ¶ 348, and that "[t]he Distributor Defendants have identical statutory obligations arising under Massachusetts state law," *id.* ¶ 349, Plaintiff fails to cite any specific provision of state law that imposes a requirement that wholesale pharmaceutical distributors identify and report suspicious orders of controlled substances to a Massachusetts government official or entity, or a state law source for a requirement that wholesale pharmaceutical distributors halt suspicious orders of controlled substances from registered pharmacies. To the

contrary, the Massachusetts laws that Plaintiff cites require only that wholesale distributors comply with federal laws and regulations governing the distribution of controlled substances.[4]

30.     The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

31.     ***First***, Plaintiff's state law claims "necessarily raise" a federal question because "resolution of the dispute requires interpretation of a . . . federal issue." *Iberiabank v. Beneva 41-I, LLC*, 701 F.3d 916, 919 n.4 (11th Cir. 2012); *see also Rhode Island Fishermen's All.*, 585 F.3d at 49 (federal issue necessarily raised where "the[ ] asserted right to relief under state law requires resolution of a federal question"); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law." (citation omitted)); *see also N. Carolina by & through N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the

---

[4] Plaintiff specifically cites four provisions of Massachusetts law that it claims give rise to the duties to report and halt shipments of suspicious orders: Mass. Gen. Laws Ann. ch. 94C, § 12(a), 105 CMR 700.006(A), 247 CMR 7.04(9)(a), and 247 CMR 7.04(9)(b). *See* Compl. ¶ 16. None of those provisions creates such a duty. Mass. Gen. Laws Ann. ch. 94C, § 12(a) merely sets forth the prerequisites for the issuance of a registration to manufacture or distribute controlled substances. 105 CMR 700.006(A) provides only that "Every person registered with the Commissioner shall keep records, maintain inventories, and make reports in conformance with the requirements of the Federal Comprehensive Drug Prevention and Control Act of 1970 and the Federal Food, Drug and Cosmetic Act, and 105 CMR 700.006." 247 CMR 7.04(9)(a) provides that "[w]holesale drug distributors shall operate in compliance with applicable federal, state, and local laws and regulations." 247 CMR 7.04(9)(b) provides that "[w]holesale drug distributors shall permit the agents of the Board and authorized federal, state, and local law enforcement officials to enter and inspect their premises and delivery vehicles, and to audit their records and written operating procedures, at reasonable times and in a reasonable manner, to the extent authorized by law."

claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

32.     As pled, Plaintiff's claims against ABDC and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Massachusetts.

33.     For example, in pleading negligence *per se*, Plaintiff alleges that Distributor Defendants' "conduct relating to the wholesale distribution of controlled substances is governed by," among other things, "the federal Controlled Substances Act," that the CSA "create[s] statutory standards that require prescription drug distributors to maintain and monitor a closed chain of distribution, and to detect, report, inspect, and halt suspicious orders so as to prevent the black market diversion of controlled substances," and that Distributor Defendants' alleged "violations of the statutory standards set forth in . . . the FCSA constitute negligence under Massachusetts law." Compl. ¶¶ 502, 303, 507 (Count II). As noted, however, the alleged duty to prevent or halt shipments of suspicious orders arises *solely* under the federal CSA, and *not* under state law. "Thus, it is not logically possible for the plaintiffs to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Distributor Defendants to report and halt shipments of suspicious orders for prescription opioids under the circumstances. *Rhode Island Fishermen's All.*, 585 F.3d at 49. "That is enough to make out a federal question." *Id.*

34.     While plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[5] Again, although Plaintiff refers in passing to "Massachusetts state law" that it claims gives rise to the same duties, Compl. ¶ 16, the specific provisions of Massachusetts law that it cites do not give rise to an independent duty for wholesale distributors of controlled substances to report or refuse to fill suspicious orders for prescription opioids. Tellingly, Plaintiff cites extensively to federal laws and regulations, federal court decisions, and DEA decisions that establish a duty to report suspicious orders and prevent opioid diversion. *See, e.g.*, Compl. ¶¶ 15, 18, 20, 348, 350, 367, 370, 502, 503, 507.

35.     In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA.

36.     *Second*, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

---

[5] Furthermore, it is not necessary for federal jurisdiction that ABDC establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiff's remaining counts against ABDC and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also Rhode Island Fishermen's All.* 585 F.3d at 48 ("[I]f the district court had original jurisdiction over any one of these causes of action, then it had supplemental jurisdiction over the rest.").

37.     **Third**, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted); *Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc.*, 726 F.3d 8, 14 (1st Cir. 2013) ("[A] federal issue may also be substantial where the resolution of the issue has 'broader significance . . . for the Federal Government.'" (quoting *Gunn*, 568 U.S. at 260)). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

38.     Plaintiff's theories of Distributor Defendants' liability necessarily require that a court determine the scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Compl. ¶ 348 ("Under the statutory scheme set out in the CSA enacted by Congress in 1970, wholesale pharmaceutical distributors were given the statutory obligation to have in place 'effective controls' to prevent the 'diversion' of controlled substances."). Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong. (2nd Sess. 1970), *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

39.     Plaintiff's theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014).

40.     Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, in *Grable*, the Supreme Court held that lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Reg. Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

41.     The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*,

189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *Rhode Island Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the distribution of controlled substances "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 (1st Cir. 2016).

42.     Removal is particularly appropriate here because Plaintiff's action is but one of more than 1,000 similar actions nationwide, most of which are pending in the MDL in the Northern District of Ohio. *See MDS (Canada) Inc. v. Rad Source Techs., Inc.*, 720 F.3d 833, 842 (11th Cir. 2013) ("[A] question that will control many other cases is more likely to be a substantial federal question."). The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[6]

43.     ***Fourth***, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them. Federal jurisdiction is therefore "consistent with

---

[6] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

44.     In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

45.     To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Distributor Defendants, Manufacturer Defendants, and Individual Defendant under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.   **OTHER REMOVAL ISSUES**

46.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

47.     The following Defendants have been served with the Complaint and consent to removal as indicated by their counsel's signatures below: Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Collegium Pharmaceutical Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Mallinckrodt LLC; Insys Therapeutics, Inc.; McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Drug Corporation.

48.     Although the following Defendants have not been served, and thus their consent to removal is not required, the Defendants nonetheless consent to removal: Allergan plc f/k/a Actavis plc;[7] and Mallinckrodt plc.[8]

49.     Defendant John N. Kapoor consents to removal, but does not concede that this action should be transferred to the MDL, as indicated by his counsel's signature in the attached consent form (**Exhibit B**).

---

[7] Allergan plc f/k/a Actavis plc, an Irish corporation, disputes that it has been served, but consents to this notice out of an abundance of caution and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

[8] Mallinckrodt plc, an Irish public limited company, disputes that it has been served, but consents to this notice out of an abundance of caution and expressly reserves all defenses, including those related to personal jurisdiction and service of process.

50.     By filing this Notice of Removal, ABDC and the consenting Defendants expressly reserve, and do not waive, any and all defenses that may be available to them, including those related to personal jurisdiction and service of process.

51.     If any question arises as to propriety of removal to this Court, ABDC requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

52.     Pursuant to 28 U.S.C. § 1446(d), ABDC will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

53.     ABDC reserves the right to amend or supplement this Notice.

**WHEREFORE**, ABDC removes this action, pending in the Superior Court Department, Commonwealth of Massachusetts, Case No. 1885CV01160, to this Court.


September 17, 2018                              */s/ Joshua D. Dunlap*
                                               Joshua D. Dunlap (BBO # 672312)
                                               PIERCE ATWOOD LLP
                                               254 Commercial Street
                                               Portland, ME 04101
                                               Tel.: (207) 791-1100
                                               Fax: (207) 791-1350
                                               jdunlap@pierceatwood.com

                                               *Counsel for AmerisourceBergen Drug*
                                               *Corporation*

                                               **CONSENTS TO REMOVAL**

                                               */s/ Timothy C. Blank*
                                               Timothy C. Blank (BBO # 548670)
                                               One International Place
                                               100 Oliver Street, 40th Floor
                                               Boston, MA 02110
                                               (617) 728-7154
                                               timothy.blank@dechert.com

Sheila L. Birnbaum*
Mark S. Cheffo*
Bert L. Wolff*
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
sheila.birnbaum@dechert.com
mark.cheffo@dechert.com
bert.wolff@dechert.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Purdue Pharma L.P.; Purdue Pharma Inc.; and The Purdue Frederick Company Inc.*

/s/ Stacey Anne Mahoney
Stacey Anne Mahoney*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178-0060
Telephone: 212.309.6000
stacey.mahoney@morganlewis.com

Steven A. Reed*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
steven.reed@morganlewis.com

Brian M. Ercole*
MORGAN, LEWIS & BOCKIUS LLP
200 S. Biscayne Blvd., Suite 5300
Miami, FL 33131-2339
Telephone: 305.415.3416
brian.ercole@morganlewis.com

*denotes national counsel who will seek pro hac vice admission*

*Counsel for Teva Pharmaceuticals USA, Inc.;*

*Cephalon, Inc.; Watson Laboratories, Inc.; Actavis LLC; and Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.*

*/s/ Charles C. Lifland*
Charles C. Lifland*
O'MELVENY & MYERS LLP
400 S. Hope Street
Los Angeles, CA 90071
Telephone: (213) 430-6000
clifland@omm.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Johnson & Johnson; Janssen Pharmaceuticals, Inc.; and Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

*/s/ Ingo W. Sprie, Jr.*
Ingo W. Sprie, Jr.*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Ingo.Sprie@arnoldporter.com

Sean Morris*
ARNOLD & PORTER KAYE SCHOLER LLP
777 S. Figueroa Street
44th Floor
Los Angeles, CA 90017
(213) 243-4000
Sean.Morris@arnoldporter.com

*\* denotes national counsel who will seek pro hac vice admission*

*Counsel for Endo Pharmaceuticals Inc. and Endo Health Solutions Inc.*

*/s/ Deborah E. Barnard*
Deborah E. Barnard (BBO # 550654)
HOLLAND & KNIGHT LLP
10 St. James Place, 11th Floor
Boston, MA 02116
Telephone: (617) 619-9240
Facsimile: (617) 617-523-6850
deborah.barnard@hklaw.com

J. Matthew Donohue*
Joseph L. Franco*
Heidi A. Nadel (BBO # 641617)
HOLLAND & KNIGHT LLP
2300 U.S. Bancorp Tower
111 S.W. Fifth Avenue
Portland, OR 97204
Telephone: (503) 243-2300
Facsimile: (503) 241-8014
matt.donohue@hklaw.com
joe.franco@hklaw.com
heidi.nadel@hklaw.com

*\* denotes national counsel who will seek pro
hac vice admission*

*Counsel for Insys Therapeutics, Inc.*

*/s/ Donna Welch, P.C.*
Donna Welch, P.C.*
Martin L. Roth*
Timothy W. Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle, Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
donna.welch@kirkland.com
rothm@kirkland.com
tknapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000

Facsimile: (202) 879-5200
jennifer.levy@kirkland.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Allergan Finance, LLC f/k/a
Actavis, Inc. f/k/a Watson Pharmaceuticals,
Inc.*

/s/ Brien T. O' Connor
Brien T. O' Connor (BBO # 546767)
Andrew J. O'Connor (BBO # 672960)
ROPES & GRAY LLP
Prudential Tower, 800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 235-4650
Brien.O'Connor@ropesgray.com
Andrew.O'Connor@ropesgray.com

*Counsel for Mallinckrodt plc and Mallinckrodt
LLC*

/s/ Callan G. Stein
Callan G. Stein (BBO # 670569)
Barry H. Boise*
PEPPER HAMILTON LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
Tel: (617) 204-5100
steinc@pepperlaw.com

*\* denotes national counsel who will seek
pro hac vice admission*

*Counsel for Collegium Pharmaceutical Inc.*

/s/ Alison M. Newman
Alison M. Newman, BBO # 693953
anewman@wc.com
WILLIAMS & CONNOLLY, LLP
725 Twelfth Street, N.W.

Washington, DC 20005
Tel:      (202) 434-5354

*Counsel for Cardinal Health, Inc.*


*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart (BBO #547499)
COVINGTON & BURLING LLP
OneCity Center
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000
ghobart@cov.com

*Counsel for McKesson Corporation*


### Certificate of Service

I hereby certify that on September 17, 2018, a copy of the foregoing *Notice of Removal*, with exhibits, was served via e-mail and by United States First Class Mail, postage prepaid, on counsel of record as follows:


Judith S. Scolnich, Esquire
Donald A. Broggi, Esquire
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
jscolnick@scott-scott.com
dbroggi@scott-scott.com

David R. Scott, Esquire
Margaret Ferron, Esquire
SCOTT+SCOTT ATTORNEYS AT LAW LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
david.scott@scott-scott.cmh
mferro@scott-scott.com

Arthur P. Kreiger, Esquire
Christine M. Zaleski, Esquire
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
akreiger@andersonkreiger.com
czaleski@andersonkreiger.com

/s/ Joshua D. Dunlap
Joshua D. Dunlap (BBO # 672312)
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
Tel.: (207) 791-1100
Fax: (207) 791-1350
jdunlap@pierceatwood.com